1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT
6                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8   ROSAURA FRIAS,                           No. C -13-00075 EDL
9              Plaintiff,                     **ORDER DENYING PLAINTIFF'S**
                                             **APPLICATION FOR TEMPORARY**
10    v.                                      **RESTRAINING ORDER**
11  WELLS FARGO BANK,
12              Defendant.
                                    /
13

14          On January 22, 2013, Plaintiff filed an Application for a Temporary Restraining Order

15  ("TRO") to prevent the foreclosure sale of Plaintiff's home that is set to take place on January 29,

16  2013.  Plaintiff's request for a TRO rests solely on her argument that Defendants failed to contact

17  her in order to assess her financial situation and explore options to avoid foreclosure in violation of

18  California Civil Code section 2923.5.  On January 25, 2013, the Court held a hearing on Plaintiff's

19  Application after receiving an opposition brief from Defendant Wells Fargo Bank.  Plaintiff sought

20  time to file a supplemental brief regarding preemption under the Home Owners' Loan Act of 1933

21  ("HOLA"), 12 U.S.C. § 1461, et seq.  Plaintiff timely filed a supplemental brief on January 28,

22  2013, which the Court has reviewed.  For the reasons stated at the hearing and in this Order,

23  Plaintiff's Application for a Temporary Restraining Order is denied.

24          "The standard for issuance of a temporary restraining order is the same as that for issuance of

25  a preliminary injunction."  Burgess v. Forbes, 2009 WL 416843, at *2 (N.D. Cal. Feb. 19, 2009).  To

26  obtain a preliminary injunction, the moving party must "establish that she is likely to succeed on the

27  merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the

28  balance of equities tips in her favor, and that an injunction is in the public interest."  Winter v.

Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008).  Alternatively, preliminary injunctive

**United States District Court**
For the Northern District of California

1  relief could be granted when the likelihood of success is such that serious questions going to the

2  merits were raised and the balance of hardships tips sharply in Plaintiff's favor, so long as Plaintiff

3  demonstrates a likelihood of irreparable harm and shows that the injunction is in the public interest.

4  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal

5  quotation and editing marks omitted).  In the Ninth Circuit, courts employ a sliding scale approach,

6  under which "a stronger showing of one element may offset a weaker showing of another."  Id.  For

7  instance, "a stronger showing of irreparable harm to plaintiff might offset a lesser showing of

8  likelihood of success on the merits."  Id.

9       Plaintiff's request for a TRO rests solely on her argument that Defendants failed to contact

10  her in order to assess her financial situation and explore options to avoid foreclosure in violation of

11  California Civil Code section 2923.5.  California Civil Code section 2923.5 "concerns the crucial

12  first step in the foreclosure process: The recording of a notice of default as required by section

13  2924."  Mabry v. Superior Court, 185 Cal. App. 4th 208, 221 (2010).

14  **Plaintiff has shown that she will suffer irreparable harm**

15       If an injunction does not issue, Plaintiff will suffer irreparable harm because her property is

16  scheduled to be sold at a trustee's sale on January 29, 2013.  See Chetal v. Am. Home Mortg., No. C

17  09–02727 CRB, 2009 WL 2612312, at *2 (N.D. Cal. Aug. 24, 2009) (citing Cottonwood Christian

18  Ctr. v. Cypress Redevelopment Agency, 218 F.Supp.2d 1203, 1220 (C.D.Cal.2002) ("every piece of

19  property is unique and thus damages are an insufficient remedy to the denial of property rights")).

20  Once a foreclosure sale occurs, there is no relief available under section 2923.5.  See Mehta v. Wells

21  Fargo Bank, N.A., 737 F.Supp.2d 1185, 1194 (S.D. Cal.2010); Washington v. National City Mortg.

22  Co., No. C 10–5042 SBA, 2010 WL 5211506, at * 5 (N.D.Cal. Dec.16, 2010) ("The loss of one's

23  home through foreclosure generally is considered sufficient to establish irreparable harm.").

24  **Plaintiff has not shown a likelihood of success on merits, nor has she raised serious
   questions**

25       Plaintiff argues she is likely to succeed on the merits because Defendants have failed to

26  contact her in order to assess her financial situation and explore options to avoid foreclosure in

27  violation of California Civil Code section 2923.5.  Section 2923.5 requires that before filing a notice

28  of default, a lender must contact the borrower and explore alternatives to foreclosure. See Mabry v.

2

United States District Court
For the Northern District of California

1   Superior Court, 185 Cal.App. 4th 208, 213–14 (2010).  There are two ways in which a lender may

2   satisfy section 2923.5.  Cal. Civ. Code § 2923.5(a)(1)(A).  First, a lender may contact "the borrower

3   by phone or in person to 'assess the borrower's financial situation and explore options for the

4   borrower to avoid foreclosure'" before filing a notice of default thirty days after making the initial

5   contact.  Cal. Civ. Code § 2923.5(a)(1)(A); Mabry, 185 Cal.App.4th at 221 (quoting Cal. Civ. Code

6   § 2923.5(a)(2)).  Second, a lender may fulfill the due diligence requirements of section 2923.5(e)

7   and wait thirty days after satisfaction of the requirements before filing a notice of default.  Cal. Civ.

8   Code §§ 2923.5(a)(1)(A); see also Argueta v. J.P. Morgan Chase, 787 F.Supp.2d 1099, 1107 (E.D.

9   Cal. 2011).  A mortgagee or beneficiary has satisfied the due diligence requirement if it was not able

10  to contact the borrower after: (1) mailing a first class letter containing certain information, including

11  the toll-free number to locate a HUD certified housing counseling agency; (2) then calling the

12  borrower "by telephone at least three times at different hours and on different days;" (3) mailing a

13  certified letter, with return receipt requested, if the borrower does not respond within two weeks of

14  the lender's telephone calls; (4) providing a means for the borrower to contact the lender in a timely

15  manner, including a telephone number to a live representative during business hours; and (5) posting

16  a link on the homepage of its Internet Web site with certain information.  Cal. Civ. Code §

17  2923.5(e).

18      "If section 2923.5 is not complied with, then there is no valid notice of default, and without a

19  valid notice of default, a foreclosure sale cannot proceed."  Id. at 223. The remedy for a failure to

20  comply with section 2923.5 is "to postpone the sale until there has been compliance with" the

21  statute. Id. (citing Cal. Civ. Code § 2924g(c)(1)(A)).

22      Here, Plaintiff states in her declaration that she was always available to explore options to

23  avoid foreclosure, but that the lender never contacted her.  Frias Decl. ¶¶ 4-5.  She states that she has

24  not been on vacation or absent from her home for an extended period of time.  Id. ¶ 6.  (She does not

25  deny that she was unavailable by telephone for some periods of time, or that she had an answering

26  machine.).  She states that her telephone was not disconnected and that she always answers her

27  phone, and she did not evade contact with her lender.  Id. ¶ 7.

28      However, Defendant has provided evidence showing that it complied with section 2923.5.

3

United States District Court
For the Northern District of California

1    Defendant has provided a copy of a letter sent to Plaintiff on October 4, 2011 that included a number

2    to locate a HUD certified counseling agency as required by section 2923.5(e). Dolan Decl. Ex. 1.[1]

3    Defendant's call records show that it attempted to contact Plaintiff on numerous occasions,

4    including October 6, 2011 at 12:37 p.m., October 6, 2011 at 4:11 p.m., October 6, 2011 at 6:27 p.m.,

5    October 12, 2011 at 9:09 p.m., October 19, 2011 at 1:14 p.m., and October 19, 2011 at 5:22 p.m.

6    Dolan Decl. Ex. 2. Those calls were answered by an answering machine. Id. Thus, these records

7    show calls on three different days at three different times in compliance with section 2923.5(e). In

8    addition, Defendant's evidence shows that on November 4, 2011, Defendant sent certified letters to

9    Plaintiff and her co-borrower as required by section 2923.5(e). Dolan Decl. Ex. 3. Defendant's

10   evidence also shows that it provided a telephone number for Plaintiff to contact during business

11   hours. Dolan Decl. Ex. 1. Further, Defendant has provided evidence that there was a third party

12   designated to be contacted on Plaintiff's behalf. Dolan Decl. ¶ 9; Ex. 5. Defendant contacted that

13   third party on numerous occasions, and the records show that the third party was similarly unable to

14   contact Plaintiff and was unable to obtain the required documents from Plaintiff. Dolan Decl. Ex. 5.

15          Defendant also argues that Plaintiff's section 2923.5 claim is preempted by HOLA and

16   therefore, she will not be able to succeed on the merits. Pursuant to the Supremacy Clause, federal

17   law preempts state law "when federal regulation in a particular field is so pervasive as to make

18   reasonable the inference that Congress left no room for the States to supplement it." Bank of

19   America v. City and County of San Francisco, 309 F.3d 551, 558 (9th Cir. 2002). In the field of

20   banking, Congress has created "an extensive federal statutory and regulatory scheme." Id. As part

21   of this extensive federal scheme, Congress enacted HOLA during the Great Depression. Silvas v.

22

23          [1]    At the January 25, 2013 hearing, Plaintiff's counsel objected to the Dolan declaration,
     stating primarily that Mr. Dolan did not keep the records himself and therefore was not competent to
24   testify as to their contents. However, Mr. Dolan is an officer of Wells Fargo who stated that he has been
     working at Wells Fargo Bank and its predecessors for more than twenty-five years and that during that
25   time, he has become familiar with the bank's records and record keeping with respect to mortgage loan
     files and associated electronic databases. Dolan Decl. ¶¶ 1, 2. He stated that he reviewed the loan file
26   and loss mitigation databases, Consolidated Notes Logs and the written correspondence related to
     Plaintiff's loan. Dolan Decl. ¶ 2. He also stated that the records that he reviewed are maintained in the
27   ordinary course of Defendant's business. Dolan Decl. ¶ 3. The Court finds that, given Mr. Dolan's
     experience and background, he is competent to testify as to the contents of the records. Further, because
     the records were maintained in the normal course of Defendant's business, they are excepted from the
28   hearsay rule. See Fed. R. Evid. 803(6). Finally, the records are judicially noticeable, and Plaintiff has
     not challenged their veracity. Fed. R. Civ. P. 201(b), (d).

4

United States District Court
For the Northern District of California

1   E*Trade Mortgage Co., 514 F.3d 1001, 1004 (9th Cir. 2008).  The purpose of HOLA was to charter

2   savings associations under federal law as a means of restoring public confidence through a

3   nationwide system of savings and loan associations that are centrally regulated according to

4   nationwide "best practices."  Id. (citing Fidelity Fed. Saving and Loan Ass'n v. de la Cuesta, 458

5   U.S. 141, 160-61 (1982)).  Through HOLA, Congress gave the OTS broad authority to issue

6   regulations governing federal savings associations.  See 12 U.S.C. § 1464; Silvas, 514 F.3d at 1005.

7        Defendant relies on 12 C.F.R. § 560.2 in support of its argument that the OTS regulations

8   establish that state laws do not apply to the lending practices of federal banks and thrifts and

9   "occup[y] the entire field of lending regulation for federal savings associations."  12 C.F.R. §

10  560.2(a).  That regulation provides that "federal savings associations may extend credit as

11  authorized under federal law, including this part, without regard to state laws purporting to regulate

12  or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this

13  section or § 560.110 of this part."  Id.  The credit activity at issue here is that states may not regulate

14  include "[l]oan-related fees, including without limitation, initial charges, late charges, prepayment

15  penalties, servicing fees, and overlimit fees," and "[p]rocessing, origination, servicing, sale or

16  purchase of, or investment or participation in, mortgages." (§ 560.2(b)(10)).   A state law of general

17  applicability can be preempted by HOLA if, as applied, it falls under section 560.2(b).  See Silvas,

18  514 F.3d at 1006; Munoz v. Fin. Freedom Senior Funding Corp., 567 F.Supp.2d 1156, 1160 (C.D.

19  Cal. 2008); see also Andrade v. Wachovia Mortgage, 2009 WL 1111182, at *2-3 (C.D. Cal. Apr. 21,

20  2009) ("Even state laws of general applicability, such as tort, contract, and real property laws, are

21  preempted if their enforcement would impact thrifts in areas listed in § 560.2(b). Alternatively, such

22  laws are preempted if they have more than an incidental effect on the lending operations of a federal

23  savings association. . . . State laws which do not affect lending practices might include tax statutes or

24  zoning ordinances.") (internal citations omitted); Ayala v. World Sav. Bank, 616 F. Supp. 2d 1007,

25  1110-112 (C.D. Cal. 2009) (claims for quiet title, fraud, emotional distress and negligence

26  preempted by HOLA); Kelley v. Mortgage Elec. Registration Sys., 642 F. Supp. 2d 1048, 1054

27  (N.D. Cal. 2009) ("Accordingly, to the extent plaintiffs' UCL, fraud, and conversion claims are

28  based on allegations that the terms of plaintiffs' loan were unlawful and that plaintiffs did not receive

United States District Court
For the Northern District of California

1  sufficient disclosures about their mortgage, they are preempted by HOLA and are dismissed as to

2  Aurora. If plaintiffs wish to reallege these claims against Aurora, they must reframe them in terms of

3  HOLA violations and show that the statute provides a private right of action for the alleged

4  violations.").

5      "State laws of the following types are not preempted to the extent that they only incidentally

6  affect the lending operations of Federal savings associations or are otherwise consistent with the

7  purposes of paragraph (a) of this section: (1) Contract and commercial law; (2) Real property law; . .

8  . (4) Tort law; (5) Criminal law; and (6) Any other law that OTS, upon review, finds: (I) Furthers a

9  vital state interest; and (ii) Either has only an incidental effect on lending operations or is not

10  otherwise contrary to the purposes expressed in paragraph (a) of this section." Id. § 560.2(c).  OTS

11  has stated "that the purpose of paragraph (c) is to preserve the traditional infrastructure of basic state

12  laws that undergird commercial transactions, not to open the door to state regulation of lending by

13  federal savings associations."  61 Fed. Reg. 50951, 50966-50967.  "When analysing the status of

14  state laws under § 560.2, the first step will be to determine whether the type of law in question is

15  listed in paragraph (b).  If so, the analysis will end there; the law is preempted. If the law is not

16  covered by paragraph (b), the next question is whether the law affects lending.  If it does, then, in

17  accordance with paragraph (a), the presumption arises that the law is preempted.  This presumption

18  can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c).  For

19  these purposes, paragraph (c) is intended to be interpreted narrowly.  Any doubt should be resolved

20  in favor of preemption." Id.

21      The California Court of Appeals in Mabry held that section 2923.5 was not preempted.

22  Mabry, 185 Cal.App.4th at 232.  However, the weight of federal authority supports a finding that

23  HOLA preempts section 2923.5.  See, e.g., Javaheri v. JP Morgan Chase Bank, No. C-10-8185

24  ODW, 2012 WL 3426278, at *4 (C.D. Cal. Aug. 13, 2012); Giannini v. Am. Home Mortg.

25  Servicing, Inc., No. C11–04489 TEH, 2012 WL 298254, at *6–8 (N.D. Cal. Feb 1, 2012);

26  Tanguinod v. World Sav. Bank, FSB, 755 F.Supp.2d 1064, 1073–74 (C.D. Cal. 2010). "Because the

27  issue is not one of interpreting state law but rather of federal preemption, 'the [Court] is not bound

28  by the decision in Mabry.' " McNeely, 2011 WL 6330170, at *3 (quoting Tanguinod, 755 F.Supp.2d

at 1074); <u>but see</u> <u>Pey v. Wachovia Mortgage Corp.</u>, 2011 WL 5573894, at *8 (N.D. Cal. Nov, 15, 2011); <u>Shaterian v. Wells Fargo Bank</u>, 2011 WL 2314151, at *4 (N.D. Cal. June 10, 2011); <u>Loder v. World Savings Bank</u>, 2011 WL 1884733, at *7 (N.D. Cal. May 18, 2011) (cases located through the Court's independent research taking a minority view on the preemption issue and/or declining to decide the issue).[2]

Thus, in light especially of the weight of the evidence before the Court showing that Defendant complied with section 2923.5, as well as the serious questions whether Plaintiff's claim survives HOLA preemption, the Court concludes that Plaintiff has not made a showing of the likelihood of success on her section 2923.5 claim, and has not raised serious questions going to the merits of her claim.

**The balance of hardships does not weigh sharply in Plaintiff's favor**

In the absence of preliminary injunctive relief, Plaintiff faces the sale of the property, and by contrast, preliminary injunctive relief provided under section 2923.5 will only delay the foreclosure sale to permit compliance with the statute. <u>See also</u> <u>Chetal</u>, 2009 WL 2612313, at *2; <u>see also</u> Frias Decl. ¶ 2 ("If this Court does not postpone the non-judicial foreclosure sale of my home . . . I will suffer greatly in losing my family home. I will suffer irreparable harm because money will not replace my home."). However, other circumstances in this case warrant finding that the balance of hardships does not tip sharply in Plaintiff's favor, if it favors her at all. In <u>Alcaraz v. Wachovia Mortgage</u>, 592 F. Supp. 2d 1296, 1301-03 (E.D. Cal. 2009), the court addressed the balance of the hardship analysis, and found that it tipped against the plaintiff. <u>See</u> <u>Alcaraz</u>, 592 F. Supp. 2d at 1306 ("This Court agrees with the Wachovia defendants and their assessment that this action "is a transparent attempt to 'buy time' " by stalling off first the foreclosure sale." Ms. Alcaraz fails to demonstrate that the balance of hardships weighs in her favor given her continuing inability to make payments toward her sizeable debt. Postponing Wachovia's lawful relief offers nothing to tip the balance in favor of Ms. Alcaraz."). This case is similar to <u>Alcaraz</u>. Here, Plaintiff defaulted on her

---

[2] At Plaintiff's counsel's request, the Court granted leave for Plaintiff to file a supplemental brief regarding HOLA preemption. The Court specifically asked Plaintiff to provide the Court with any federal authority following the <u>Mabry</u> decision to find no preemption. On January 28, 2013, Plaintiff filed a supplemental brief, which made only very general, non-persuasive arguments against preemption while failing to cite any federal cases following <u>Mabry</u>.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

loan in September 2010, and has been living mortgage-free in her home since that time. Defendant states that the outstanding arrearage is $96,639.82, and that her original loan amount was $532,000. RJN Ex. A; Dolan Decl. ¶ 3. Moreover, Defendant not only tried to contact Plaintiff by letter and by phone, but also contacted her third party designee, who reported that she was also unable to reach Plaintiff or obtain documents from her. Dolan Decl. ¶¶ 8-9.

Further, Plaintiff failed to seek injunctive relief earlier, which weighs slightly in favor of Defendant on the balance of hardships. See Crews v. Wachovia Mortgage, 2010 U.S. Dist. LEXIS 77660, at *12 (C.D. Cal. July 23, 2010) ("'A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief.' Of course, delay alone does not justify the denial of equitable relief - delay must be accompanied by some form of prejudice. . . . In the present case, Plaintiff had at least 10 days in which she could have brought the Ex Parte Application. It is beyond comprehension why Plaintiff waited until now to file for preliminary injunctive relief. It would be inequitable to permit Plaintiff to benefit from her own unexplained delay."). Here, Defendant notes that Plaintiff has been in default for more than two years, the notice of default was recorded on September 13, 2012, Plaintiff's complaint was filed in state court on December 7, 2012, yet Plaintiff did not file an application for a temporary restraining order until January 22, 2013, only five business days before the scheduled trustee's sale. Although the delay itself does not support denial of injunctive relief, it is a factor that the Court may consider.

**The public interest slightly favors Plaintiff**

The public interest favors vindicating the Legislature's intent "to have individual borrowers and lenders assess and explore alternatives to foreclosure." Mabry, 185 Cal. App. 4th at 223. This factor weighs somewhat in Plaintiff's favor. However, as described above, Defendant attempted to contact Plaintiff on numerous occasions, and even though Plaintiff engaged a third party to communicate with the bank on her behalf, that third party also had not been able to reach Plaintiff or obtain the necessary documents from Plaintiff. Dolan Decl. ¶ 9; Ex. 5.

**Conclusion**

On balance, Plaintiff has not shown that the Court should issue a TRO. Therefore, Plaintiff's ex parte application for a temporary restraining order is denied.

IT IS SO ORDERED.

Dated: January 28, 2013

_Elizabeth D. Laporte_
ELIZABETH D. LAPORTE
United States Magistrate Judge